IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:17-cv-44

MELISSA GORE,
          Plaintiff,

    vs.

WAL-MART STORES, INC. and XYZ
CORPORATION, INC. and JOHN DOE,
          Defendants.

**EXHIBIT A**

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Exhibit A-Excerpts from Plaintiff's Deposition

Case 7:17-cv-00044-FL    Document 20-1    Filed 01/10/18    Page 1 of 15

A.   The grocery area.

Q.   You mean hadn't been to the grocery section yet?

A.   Yet, right.

Q.   Okay.  Hadn't been to the grocery section yet.  Okay.

A.   Yes, sir.  So we were just going through picking up what we needed.  We were coming down the middle aisle of the grocery section and the clothing section, that aisle through there.

Q.   Was the clothing on your right-hand side or the left-hand side?

A.   On my left.

Q.   Clothing was on your left-hand side --

A.   Uh-huh (yes).

Q.   -- as you were going towards the front of the store?

A.   We were going towards the front.

Q.   And the clothing was on the left?

A.   I think so.  Yes, sir.

Q.   And grocery was on the right?

A.   Uh-huh (yes).

Q.   Okay.  All right.  I'm with you.

A.   Because we -- anyway, we had come out and in some aisles, and then we were going towards the front.  I spotted the ice cream aisle, so I told him, I said, "Let me get me

Electronically signed by JENNIFER RAY (001-064-082-8705)          94aa21c5-55de-4e4f-a53e-0c517bcdc254

some ice cream." So I took a right, went down the aisle. He kept on going. So I got my ice cream and I come back out, and when I rounded the corner -- I was looking for him. You know, I was looking around seeing which way he went, and then I noticed him over to my right. So I turned the corner and my feet came out from under me.

Q. Now, when you went down the ice cream aisle, did you get the ice cream, then make a U-turn and come right back the same way you came?

A. Yes, sir.

Q. And then you came back to the main aisle that was going towards the front of the store?

A. Yes, sir.

Q. And was it in this main aisle where the accident happened?

A. It was right in -- once I turned on the main aisle and went to take my right down the next aisle, that's -- it was right there.

Q. Was this a scenario where there -- well, let me back up a little bit.

Do you know what caused you to fall?

A. After I got up, I noticed there was squished grapes on the floor.

Q. Okay. Do you know how they got there?

A. I do not.

Electronically signed by JENNIFER RAY (001-064-082-8705)          94aa21c5-55de-4e4f-a53e-0c517bcdc254

Q.   Do you know how long they had been there?

A.   I do not.

Q.   Did anybody who worked for Wal-Mart say how they got there?

A.   No, sir.

Q.   Did anybody who worked for Wal-Mart say how long they had been there?

A.   No, sir.

Q.   Are you aware of any evidence that suggests how long the grapes had been present?

A.   No, sir, other than there was some more that were smushed over to the side from where I had -- had fallen.

Q.   Okay.  Had they been smushed by you?

A.   No, sir.

Q.   How do you know that?

A.   I weren't over where they were.  Where I fell was other smushed grapes.

Q.   Okay.  A total of how many grapes did you see?

A.   Probably the most in the whole area there was probably about five or six at the most.  Right there where I was at was probably about three, maybe four.

Q.   Were there any grapes stocked in that area?

A.   I'm not real sure.  At that point, I had never been in that area.  It was the beginning of the produce aisle.  So --

Electronically signed by JENNIFER RAY (001-064-082-8705)

94aa21c5-55de-4e4f-a53e-0c517bcdc254

want nobody else to step on them, so I was trying to make sure nobody else come through and stepped on the grapes.

I stood there -- it seemed like a long time, but he had to find someone to come help us. It took him a few minutes. He went down a lot of the aisles and then come back, still didn't find nobody. And then he went to the deli and yelled and asked was anybody back there. A lady came out and he asked for the manager, and then we just stayed -- stayed there in that area.

And then she came up and started talking and they started taking pictures of the floor. She helped me walk to the bench at the front of the store, and they got me an ice pack and a wrap for my leg. They asked if I wanted an ambulance called, and I was kind of embarrassed being picked up off the floor, and I told them no, that I thought I'd be okay because I didn't want to mess up our family weekend. So --

Q. About what time of day was it?

A. It was around 9:00, 9:30 at night, because we had left -- we had to work. And when we got off work, we started this way.

Q. Was the store busy?

A. Yes, sir.

Q. Do you remember the name of the member of management who responded?

Electronically signed by JENNIFER RAY (001-064-082-8705)

94aa21c5-55de-4e4f-a53e-0c517bcdc254

telling you what was available in the community?

A. Yes, sir.

Q. Okay. Did she tell you don't go --

A. No.

Q. -- to some other place, like don't go see Dr. So-and-so?

A. No, sir.

Q. Okay. Have you ever spoken with her again?

A. No, sir.

Q. Have you ever spoken with anybody at the store again about this incident?

A. No, sir.

Q. Have you been there since this happened?

A. I have.

Q. Had you been -- did you ever go back and look at the scene?

A. Not at that time, no, sir.

Q. How about ever?

A. Well, I'm -- I'm aware of where it's at now.

Q. When is the last time you've been there?

A. Saturday before last.

Q. Okay. Is it -- is it -- as far as you can tell, is it the same now as it was then?

A. No. Actually, now they have rugs --

Q. Okay.

A. -- like down the produce aisle where your lettuce and all that stuff is.

Q. Well, where you fell, was there a produce display?

A. Right -- right in front of me, right -- a few steps in the aisle was the produce display.

Q. To your right or to your left or in front?

A. When I made that corner to my right, they were there on my right.

Q. Were you walking in the direction of the produce area, or were you walking towards the front of the store?

A. I had -- was walking towards the front of the store, and I went to take a right to the produce area, and that's when I slipped.

Q. Were you going to pick up some produce?

A. When I was looking for my husband and he actually had went that way.

Q. Okay. So your husband was in the produce area?

A. Yes.

Q. Did the fall, therefore, then take place in the produce area?

A. It was right on the edge of the aisle, right in the middle aisle where you turn to go into the produce area, right -- time I took that right.

Q. Okay. So if you go straight, you go -- you would go straight out the front door?

Electronically signed by JENNIFER RAY (001-064-082-8705)          94aa21c5-55de-4e4f-a53e-0c517bcdc254

A.    If I had went straight, yes.

Q.    Okay.  And then, generally speaking, there's cash registers in that direction; is that correct?

A.    That's correct.

Q.    All right.  But your husband had actually turned off the main aisle and gone into the produce section?

A.    Correct.

Q.    And you were following him?

A.    Yes, sir.

Q.    How many steps did you take into the actual produce section before you slipped?

A.    Probably my first step I slipped.

Q.    Okay.  But you had taken a right-hand turn, correct?

A.    I was in the process.

Q.    Okay.  And on your right-hand side coming up on your right would have been a display of produce; is that correct?

A.    Yes, sir.

Q.    Do you remember what types of goods it was?

A.    I don't.

Q.    Okay.  Were there any rugs on the floor?

A.    No, sir.

Q.    Were there any rugs anywhere in the produce section?

Electronically signed by JENNIFER RAY (001-064-082-8705)          94aa21c5-55de-4e4f-a53e-0c517bcdc254

A.  Not to my knowledge.

Q.  Were there any caution cones in the area?

A.  No, sir.

Q.  So after the incident, your husband came back from the interior of the produce section to where you were and helped you up?

A.  Yes, sir.

Q.  And he left the cart for you to lean on, so to speak?

A.  Yes, sir.

Q.  And then he went over to -- went around the store looking for an employee and eventually went to the deli?

A.  Yes, sir.

Q.  Okay.  After the paperwork was complete, did you pay for your items?

A.  Yes, he did.

Q.  At that point, could you walk?

A.  I could limp, yes, sir.

Q.  Okay.  What part of your body was hurting most?

A.  My right knee and my hands, my right knee the most.

Q.  Okay.  And how did you get out to the car?

A.  My husband.  I held onto the buggy and we slowly made it out.

Q.  And then did you go to the rental unit?

Electronically signed by JENNIFER RAY (001-064-082-8705)          94aa21c5-55de-4e4f-a53e-0c517bcdc254

squished grape?

A.   I have -- I don't know.  When I seen it, it was squished.  It would --

Q.   But did it feel wet when you -- when you slipped on it?

A.   Yes, ma'am.

Q.   Okay.  And when you put your foot down on it, did you feel anything under your foot when you stepped?

A.   No, ma'am.

Q.   Okay.  How many -- and you may have already answered this -- but how many grapes -- do you recall how many grapes were on the floor?

A.   Where I slipped, it looked to be maybe three, maybe four.  But over to the side from where I was at, there were more.

Q.   Were all of those intact grapes or were some of them squished?

A.   They were squished.

Q.   All of those?

A.   One or two maybe have been intact.  That was closer -- over to the corner.

Q.   Okay.  But just to clarify for the record, you saw some that were squished that you did not fall on?

A.   Yes, ma'am.

Q.   Okay.  What was the -- did you notice the

Electronically signed by JENNIFER RAY (001-064-082-8705)                    94aa21c5-55de-4e4f-a53e-0c517bcdc254

condition of the floor around you at that time in the produce area?

A.   It was -- it hadn't been mopped.  There were spots -- you know, dark spots on the floor like something had been spilt like there in the aisle way.

Q.   Okay.  I don't have any further questions.

MR. WASHBURN:   Thank you so much for your time.

(Deposition adjourned at 12:59 p.m.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## CASE NO. 7:17-cv-44

MELISSA GORE,
        Plaintiff,

vs.

WAL-MART STORES, INC. and XYZ
CORPORATION, INC. and JOHN DOE,
        Defendants.

**EXHIBIT B**

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Exhibit B-Defendant's Supplemental Response to Plaintiff's Interrogatory 8

C.     Counsel for the Defendant Wal-Mart objects to the definitions and instructions contained in the Plaintiff's Interrogatories and Request for Production of Documents and states that these responses will be provided pursuant to North Carolina Rules of Civil Procedure.

These general objections are incorporated into each of the following responses:

## INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

8.     Please state the procedures implemented for the inspection and clean-up of the premises at issue, including the person(s) in charge of such inspection and clean-up, when the premises were inspected/cleaned-up on July 18, 2014, and a description of all written reports or logs of such inspections/clean-ups. Please attach a copy of the written reports/logs to your Answer hereto.

**RESPONSE: Objection.  Counsel for the Defendants object to this Interrogatory on grounds and to the extent that it seeks to discover information privileged from discovery as work product prepared in anticipation of litigation, information kept confidential in the course of the Defendants' business, and seeks information not calculated to lead to the discovery of admissible evidence.  Without waiving the above objections, procedures and policies exist for the maintenance of the premises and Defendants will supplement its response to this Interrogatory #8.  Additionally, Defendants state that no written maintenance logs exist for the premises as these type of records are not kept in the regular course of Defendants' business.**

**SUPPLEMENTAL**
**RESPONSE:**          **Without waiving the above objections, Defendants have attached documents entitled "Department Safety Solutions", "Slip, Trip and Fall Guidelines", and "Prevent Slips, Trips, and Falls".  Furthermore, Defendants reaffirm that no written maintenance logs exist.**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## CASE NO. 7:17-cv-44

MELISSA GORE,

    Plaintiff,

  vs.

WAL-MART STORES, INC. and XYZ
CORPORATION, INC. and JOHN DOE,
    Defendants.

**EXHIBIT C**

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Exhibit C-Plaintiff's Affidavit

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:17-cv-44

MELISSA GORE,
               Plaintiff,

vs.

WAL-MART STORES, INC. and XYZ
CORPORATION, INC. and JOHN DOE,
               Defendants.

**AFFIDAVIT OF PLAINTIFF**

**NOW COMES** the affiant, first being duly sworn, deposes and says:

1. I am the Plaintiff in the above-entitled action.

2. I sustained a fall on the Defendant's premises while I was there as a guest on July 18, 2014.

3. I was in the main grocery aisle lane of the Wal-mart store in Whiteville, when I turned to go into the produce section. When I took my first step into the produce area from the main aisle, my feet came out from under me and I fell hard onto my knees.

4. I exercised reasonable care in navigating myself through the Defendant's premises. I was walking carefully, taking proper precaution and keeping a reasonable outlook as I left the ice cream aisle and proceeded to the produce section.

5. After I fell, I noticed that the grapes were squished. I also noticed grapes in an area beside me where I had not fallen and had not touched were also squished.

6. The floors in the produce section where dirty and did not appear to have been mopped in a while.

7. There were no mats in the area where I fell at the time of my fall. Since my fall, I have noticed that there are mats in the area where I fell.

Melissa Gore   signed before me,
Diane Elk , Notary Public
January 10, 2018
Notary Public
Robeson County, NC
Commission expires  01 - 10 · 2019

Melissa Gore
Affiant